WALTER S. HELLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107639.   Promulgated June 30, 1943.

*Lloyd W. Dinkelspiel, Esq.*, and *Benjamin H. Hicklin, C. P. A.,* for the petitioner.

*Samuel Taylor, Esq.*, for the respondent.

MELLOTT, *Judge:* The Commissioner determined a deficiency in the income tax of petitioner for the calendar year 1937 in the amount of $7,952.40. In an amended answer he asks for an increased deficiency in the aggregate amount of $35,265.35.

The issues are:

(1) Is petitioner entitled to a deduction of $2,145 because of a payment made during 1937 to attorneys for services rendered to him as a "dissenting shareholder," under a California statute which authorizes a proceeding to require a corporation, merging or consoli-

dating with another, to pay dissenting shareholders the fair market value of their stock?

(2) Did petitioner sustain a deductible capital loss in 1937 when he disposed of stock of a Delaware corporation and acquired stock of a California corporation, organized to take over the business and assets of the Delaware corporation?

(3) Is petitioner entitled to any increased cost basis for his Delaware corporation stock as a result of transactions between him and the corporation in 1929, involving East Bay Utility District bonds? (This issue need not be decided in the event the second issue is resolved against petitioner.)

The remaining issues raised by the pleadings have either been conceded or settled by stipulation. Effect will be given thereto in the settlement under Rule 50.

Substantially all of the facts relating to the controverted issues have been stipulated and are found accordingly.

Petitioner is a resident of San Francisco, California, and filed his income tax return for 1937 with the collector of internal revenue for the first district of California.

## ISSUE I.

*Findings of fact.*—During the year 1937 petitioner paid attorneys, as his proportionate share of retainer, costs, and disbursements, $1.50 per share on 1,430 shares of the capital stock of the Associated Oil Co. owned by him or $2,145. This sum was paid in connection with litigation begun in the year 1937 and carried on throughout that year by petitioner and other dissenting stockholders of the Associated Oil Co. in the Superior Court of California. During 1937 a merger of the Associated Oil Co. into the Tidewater Oil Co. was under way. Some of the stockholders, including petitioner, refused to accept Tidewater's offer of shares in exchange for their shares in the Associated Oil Co., and demanded that they be paid the cash value of their shares. The litigation was instituted under and in accordance with the provisions of section 369 of the Civil Code of California. As a result thereof, petitioner received, subsequent to the end of the year 1937, the sum of $50 per share for his Associated Oil Co. stock, in accordance with a court award. The attorneys' fee of $2,145 was included in petitioner's return for the calendar year 1937 as a part of a deduction of $6,495.91 claimed under the heading of "Other Expenses Authorized by Law."

*Opinion.*—Respondent contends that the amount of $2,145 paid by petitioner to attorneys during 1937 should be capitalized. Petitioner contends that it is deductible as expense.

Section 23 (a) of the Revenue Act of 1936 was amended by section

121 of the Revenue Act of 1942 to allow the deduction of nontrade and nonbusiness expenses. The pertinent provisions of the latter section are set out in the margin.[1]

Respondent urges that the attorneys' fee was incurred in a matter pertaining to assets of a purely capital nature; that the litigation actually involved a defense by petitioner of his rights in, and his title to, these assets; and that the expenditure, being a capital one, was not a deductible expense for 1937. He cites *Chestnut Farms Dairy, Inc.*, 19 B. T. A. 192; affd. *sub. nom.*, *Brawner* v. *Burnet*, 63 Fed. (2d) 129; *Charles J. Livingood, Executor*, 25 B. T. A. 585; and *Vernor* v. *United States*, 23 Fed. Supp. 532. See also *Morgan Jones Estate*, 43 B. T. A. 691; affd., 127 Fed. (2d) 231; and *Central Material & Supply Co.*, 44 B. T. A. 279; affirmed on issue involving capital expenditures, 126 Fed. (2d) 542.

An examination of the cited cases discloses that they involved payments made in connection with the acquisition of capital assets or for the purpose of defending title to, or of protecting, such assets. In *Vernor* v. *United States, supra,* the Court of Claims pointed out that the courts and the Board of Tax Appeals have repeatedly held that fees paid for legal services, where the acquisition of capital assets or the litigation of matters pertaining to assets of a purely capital nature are involved, are capital expenditures and not deductible as ordinary and necessary business expenses, citing *Charles J. Livingood, Executor, supra; First National Bank of St. Louis*, 3 B. T. A. 807; *Stephens Fuel Co.*, 13 B. T. A. 666; *Chestnut Farms Dairy, Inc., supra;* and *Hutchings* v. *Burnet*, 58 Fed. (2d) 514. These cases were all decided prior to the enactment of the Revenue Act of 1942.

The report of the Finance Committee which accompanied H. R. 7378 and which as amended became the Revenue Act of 1942, in discussing the amendment to section 23 (a) providing for the deduction of nontrade or nonbusiness expenses, contains the following statement:

Expenses, to be deductible under section 23 (a) (2) must be ordinary and necessary, which rule presupposes that they must be reasonable in amount and

---

[1] SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS.

(a) DEDUCTION FOR EXPENSES.—Section 23 (a) (relating to deduction for expenses) is amended to read as follows:

"(a) Expenses.—

\* \* \* \* \* \* \*

"(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

\* \* \* \* \* \* \*

(e) RETROACTIVE AMENDMENT TO PRIOR REVENUE ACTS.—For the purposes of the Revenue Act of 1938 or any prior revenue Act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue Act on the date of its enactment.

must bear a reasonable and proximate relation to the production or collection of income, or to the management, conservation, or maintenance of property held for that purpose.

It is obvious from the above that Congress intended that some expenditures pertaining to assets of a purely capital nature were to be allowed as deductions from gross income. Other statements in the report clearly indicate that this is so. Thus, in referring to the term "income" it is said that it "comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent years, and is not confined to recurring income but applies as well to gain from the disposition of property."

The attorneys' fee paid by petitioner, while relating to a capital asset, bore a reasonable and proximate relation to the production or collection of income, and to the management of property held for that purpose. The litigation did not, as respondent urges, involve a defense by petitioner of his rights in, and his title to, the stock. The statute under which it was instituted presupposes that the "dissenting stockholders" own the shares which they are seeking to have appraised. The litigation concerned the exercise by petitioner of his right to receive cash for his shares and the determination of the amount thereof, he not having approved the contemplated merger or consolidation and having taken the other steps required by the statute. As a result of that litigation the fair market value of his stock was determined and paid to him in 1938. The attorneys' fee in our judgment was paid for services rendered in connection with "the production or collection of income," and in connection with "the management * * * of property held for the production of income." Respondent therefore erred in disallowing the claimed deduction.

### Issue II.

*Findings of fact.*—During the years 1923 to 1927 petitioner and Harry A. Bruce were members of a partnership which was engaged in the investment banking business in San Francisco, California, under the name of Heller, Bruce & Co. Edith C. French was an employee of the partnership.

On January 1, 1927, Heller, Bruce & Co. was duly incorporated under the laws of Delaware. This corporation will be hereinafter referred to as the Delaware corporation.

The Delaware corporation issued its stock in exchange for the assets of the partnership. Under the applicable revenue act no gain or loss was recognized on the exchange. From January 1, 1927, until the issuance of a certificate of dissolution by the Secretary of State of Delaware on December 20, 1937, the Delaware corporation engaged

in the investment banking business in San Francisco. During this period it occupied the office in the Mills Building in that city which had formerly been used by the partnership.

From the date of its organization until the date of its dissolution the principal officers of the Delaware corporation were Walter S. Heller, president, Harry A. Bruce, vice president, and Edith C. French (sometimes referred to as E. C. French), secretary and treasurer. The directors of the Delaware corporation, during the entire period of its existence, were the same as its principal officers.

The details of the issuance of the stock of the Delaware corporation are shown in the stipulation of the parties. Petitioner acquired several blocks of its preferred stock, aggregating by November 1, 1933, 2,649 shares. The following schedule shows the stockholdings, in shares and percentages, from the dates shown until the dissolution of the corporation:

| Stockholders | Preferred (Since 11/1/33) | | Common A (Since 5/27/27) | | Common B (Since 1/7/27) | |
|---|---|---|---|---|---|---|
| | Shares | Percent | Shares | Percent | Shares | Percent |
| Walter S. Heller | 2,649 | 96.327 | 45 | 45 | 200 | 50 |
| Harry A. Bruce | 100 | 3.636 | 45 | 45 | 200 | 50 |
| E. C. French | 1 | .037 | 10 | 10 | None | None |
| Total | 2,750 | 100 | 100 | 100 | 400 | 100 |

On December 6, 1937, Heller, Bruce and Co. was organized under the laws of California. The name of the corporation was changed on December 28, 1937, to Heller, Bruce & Co. This corporation will be hereinafter referred to as the California corporation.

The first meeting of the board of directors of the California corporation was held on December 7, 1937. The following is an excerpt from the minutes of that meeting:

The President announced that the corporation had been organized for the purpose of acquiring and carrying on the business now conducted by Heller, Bruce & Co., a Delaware corporation, consisting of the purchase and sale, and otherwise dealing in, stocks, bonds and other securities.

On motion duly made and seconded, it was unanimously

RESOLVED, that the corporation sell to WALTER S. HELLER two thousand (2,000) shares of Preferred stock for the sum or price of $100.00 per share and fifteen hundred (1500) shares of Common stock at the sum or price of $1.00 per share; and

BE IT FURTHER RESOLVED that of the consideration to be received by the corporation for the sale of its stock without par value, that the sum of $165,000 be allocated to Capital and the sum of $35,000 be allocated to Paid-In Surplus.

On December 7, 1937, the California corporation filed its application with the Commissioner of Corporations of California for permission to issue and sell its shares of stock in accordance with the provisions

of the above resolution. A permit was granted on December 11, 1937. It contained a condition that the shares should be placed with an escrow holder and that they should not be resold or transferred without the written consent of the corporation commissioner. This condition was eliminated by an amendment to the permit on December 14, 1937.

On or about December 8, 1937, the California corporation filed an application for a broker's certificate with the Division of Corporations of California, paying a filing fee of $25. On December 13, 1937, the commissioner of corporations issued to it a license as a broker under the Corporate Securities Act of California.

On December 15, 1937, the California corporation issued to petitioner 1,500 shares of its common stock and 2,000 shares of its preferred stock. No other shares were issued at that time. On January 20, 1938, petitioner surrendered to the corporation his certificate for 1,500 shares of common stock, and in lieu thereof 45 shares of common stock were issued to Harry A. Bruce and 1,455 shares to petitioner. On the same date petitioner surrendered his certificate for 2,000 shares of preferred stock, and in lieu thereof 1,939 shares of preferred stock were issued to him, 60 shares to Harry A. Bruce and one share to Edith C. French. The total number of shares of the California corporation outstanding at all times has been 2,000 shares of preferred and 1,500 shares of common. Since January 20, 1938, the shares have been held as follows:

| Stockholders | Preferred | | Common | |
|---|---|---|---|---|
| | Shares | Percent | Shares | Percent |
| Walter S. Heller | 1,939 | 96.95 | 1,455 | 97 |
| Harry A. Bruce | 60 | 3.00 | 45 | 3 |
| E. C. French | 1 | .05 | None | None |
| Total | 2,000 | 100 | 1,500 | 100 |

On December 15, 1937, petitioner borrowed from Wells Fargo Bank & Union Trust Co. the sum of $200,000, executing and delivering to it two promissory notes, one in the amount of $165,000 and one in the amount of $35,000. As collateral for the notes petitioner deposited securities having a market value substantially in excess of the aggregate amount borrowed. The $200,000 borrowed by petitioner was deposited in his personal checking account at the Union Trust Office of Wells Fargo Bank & Union Trust Co. On the same date (December 15, 1937) petitioner drew two checks against this account, payable to the order of the California corporation, in the amounts of $193,900 and $1,455. On the same date Edith C. French drew her check in the amount of $100 payable to the California corporation, and Harry A. Bruce drew his check in the amount of $6,045 payable to the same corporation. All of the checks were deposited on December 15, 1937, in an account to the credit of the California corporation at the Union

Trust Office of Wells Fargo Bank & Union Trust Co. The sums thus deposited in the account aggregated $201,500. They were received by the California corporation in payment for the stock referred to in the minutes of the meeting of the directors held on December 7, 1937, as follows: Walter S. Heller, 1,939 shares of preferred stock and 1,455 shares of common stock; Harry A. Bruce, 60 shares of preferred stock and 45 shares of common stock; and E. C. French, one share of preferred stock.

At a meeting of the board of directors of the California corporation held on December 15, 1937, at ten o'clock a. m. a resolution was adopted to offer to purchase the assets of the Delaware corporation at the book value thereof, less liabilities, for the total sum of $681,741.41. Resolutions were also adopted for the opening of a bank account with Wells Fargo Bank & Union Trust Co. and authorizing the corporation to borrow from that bank such amounts as might be necessary up to $1,000,000.

On December 15, 1937, at a meeting of the board of directors of the Delaware corporation held at two o'clock p. m. the proposal of the California corporation was received and by resolution the offer was accepted. A written consent of the stockholders to the sale was filed with the minutes of the meeting. It was also resolved that the corporation should be dissolved forthwith and the officers were directed to proceed with the filing of the necessary certificate of dissolution. It was further resolved that the officers be authorized and directed to take immediate steps to liquidate and wind up the affairs of the corporation and to transfer the assets to the stockholders thereof. All of the stockholders signed a consent to dissolution dated December 15, 1937.

On December 15, 1937, the Delaware corporation was indebted to Wells Fargo Bank & Union Trust Co. in the amount of $565,000 on demand notes secured by collateral. On December 16, 1937, the California corporation borrowed $565,000 on a note from Wells Fargo Bank & Union Trust Co. This sum, pursuant to instructions from the California corporation, was credited on the books of Wells Fargo Bank & Union Trust Co. at its main office to a bank account entitled "Heller, Bruce and Company." On the same date $150,000 was transferred from the account with the Union Trust Co. branch of Wells Fargo Bank & Union Trust Co., heretofore mentioned, to the account "Heller, Bruce and Company," making a total on deposit in said account of $715,000.

On December 16, 1937. the California corporation issued its check in the amount of $681,741.41 to the Delaware corporation for the assets of the Delaware corporation referred to in the minutes of the directors' meeting of the Delaware corporation held on December 15,

1937, and in the minutes of the meeting of the California corporation held on December 15, 1937. This check of the California corporation came from the check book used by the Delaware corporation, the "&" being crossed out the word "and" being substituted.

On December 16, 1937, the Delaware corporation issued its check to Wells Fargo Bank & Union Trust Co. in complete liquidation of its debt of $565,000.

· Wells Fargo Bank & Union Trust Co. entered the payment of $565,000 made by Heller, Bruce & Co., the Delaware corporation, on December 16, 1937, on the same ledger card on which it entered the loan of $565,000 to Heller, Bruce and Co., the California corporation. Both entires were made on the same bank record, the bank merely changing the name "Heller, Bruce & Co." on the card to "Heller, Bruce, and Co." The collateral securing the loan of the Delaware corporation was transferred by the bank from the collateral record of the Delaware corporation to a separate collateral record in the name of the California corporation, and a collateral receipt was issued to the California corporation listing the securities held as collateral by the bank.

The journal entry on the books of the California corporation pertaining to the acquisition of the assets and the payment of $681,741.41 is as follows:

| | |
|---|---|
| 12/15/37 Investment Department—Municipal Bonds— | |
| Inventory_____ | $355,732.92 |
| Investment Department—Corporation Bonds— | |
| Inventory_____ | 95,180.00 |
| Trading Dept.—Corporation Bonds Inventory_ | 138,429.25 |
| Trading Dept.—Stocks_____ | 3,763.64 |
| Accounts Receivable—customers_____ | 158,744.10 |
| Accrued Int. Rec. (On inventory)_____ | 4,951.16 |
| To accounts Payable Bonds_____ | $66,349.93 |
| Notes Payable—Rose Heller_____ | 6,744.73 |
| Bonds—oversales_____ | 1,965.00 |
| Heller, Bruce & Co_____ | 681,741.41 |

For recording the purchase of inventory, accounts receivable and accrued interest at cost and the assumption of certain liabilities at actual amounts per Heller, Bruce & Co. books at December 15, 1937. Purchases on the foregoing basis authorized by the Board of Directors at their meeting December 15, 1937.

On December 15, 1937, the Delaware corporation entered on its books in the accounts receivable and sales records the following receivables from the California corporation:

Invoice No. 2913, $138,429.23 for $172,740 par value, various corporation bonds.
Invoice No. 4905, $355,732.92 for $312,000 par value, various municipal bonds.
Invoice No. 9406, $95,180 for $101,000 par value, various corporation bonds.
Total receivables, $589,342.17.
Also trading department stocks, $3,763.64.

On December 15, 1937, the following entries appear in the journal of the California corporation on its accounts payable and bond purchase records, being items payable to the Delaware corporation as follows:

Invoice 7751, $312,000 par value, various municipal bonds against payment of $355,732.92.

Invoice No. 7752, $101,000 par value, various corporation bonds against payment of $95,180.

Invoice No. 2844, $172,740 par value, various corporation bonds against payment of $138,429.23.

Total payables, $589,342.17.

Also for trading department stocks, $3,763.64.

The bonds were in bearer form and stock assignments accompanied the stocks.

Bond dealers frequently utilize bank credit in purchasing large blocks of bonds. The practice of petitioner, his partnership and corporations has been to put up approximately 10 per centum of the agreed purchase price, securing the remainder from a bank and allowing the bank to hold the bonds or certificates of ownership of them as collateral security for the loan. This was substantially the plan followed by the California corporation in the acquisition of the assets of the Delaware corporation, which consisted principally of stocks and bonds.

The stocks and bonds were acquired by the California corporation from the Delaware corporation at a net cost of $591,140.81. Their fair market value at the time of acquisition was $552,652.63. The amount of $591,140.81, at which the assets were placed on the books of the California corporation, was the amount at which the stocks and bonds were carried on the books of the Delaware corporation. It had been the practice of the Delaware corporation to adjust the value of stocks and bonds as of December 31 of each year at the market price or cost thereof, whichever was the lesser. Part of the stocks and bonds which were acquired by the California corporation from the Delaware corporation, as aforesaid, had been acquired by the Delaware corporation prior to January 1, 1937. Such stocks and bonds were carried on the books of the Delaware corporation and acquired by the California corporation at the cost thereof to the Delaware corporation or the market value thereof as of December 31, 1936, whichever was the lesser. The remainder of the stocks and bonds were acquired by the Delaware corporation in 1937 and carried on its books at cost. They were acquired by the California corporation at their cost to the Delaware corporation.

On December 17, 1937, the Delaware corporation issued its check to petitioner in the sum of $135,000.[2] This check was endorsed by

---

[2] This fact is stipulated. There seems to be no question that the check was issued in partial liquidation of petitioner's stock.

petitioner and delivered to Wells Fargo Bank & Union Trust Co. in partial payment upon his loan account.

Certificate of dissolution of the Delaware corporation was issued on December 20, 1937. On December 24, 1937, the California corporation issued its check to the Delaware corporation in the amount of $23,939.49 for its remaining assets. The following journal entry taken from the books of the California corporation indicates the net assets for which the check in the amount of $23,939.49 was issued by the California corporation to the Delaware corporation:

| | |
|---|---:|
| Notes Payable—Santa Inez Co. | $13,000.00 |
| Miscellaneous Accounts Receivable | 839.69 |
| Accrued Int. Rec.—P. G. E. Coupons | 4,275.00 |
| Fixed Assets—Office Equipt | 3,250.69 |
| "    "   —Automobile | 353.10 |
| "    "   —Leasehold Improvements | 509.28 |
| Prepaid Insurance | 647.00 |
| Prepaid Salaries and Commissions | 1,939.81 |
| | |
| [Total | $24,814.57] |
| To Group Insurance Liability | $35.10 |
| Hospital Insurance | 9.90 |
| Unemployment Ins. & Social Security | 21.75 |
| Salesmen's Commissions Payable | 26.20 |
| Taxes Payable | 782.13 |
| Heller, Bruce & Co. (a Delaware corp.) | 23,939.49 |
| | |
| [Total | $24,814.57] |

For recording purchases of various assets, net of liabilities both at book values at December 31, 1937.

On December 24, 1937, the Delaware corporation issued checks to its stockholders as follows:

| Stockholder | Check No. | Amount |
|---|---|---:|
| Walter S. Heller | A3715 | $21,463.66 |
| Harry A. Bruce | A3716 | 6,280.22 |
| E. C. French | A3718 | 62.90 |

Petitioner endorsed the check issued to him and delivered it to Wells Fargo Bank & Union Trust Co. in payment on his loan account. The check issued to Harry A. Bruce was endorsed by him and deposited to his personal account at Crocker First National Bank of San Francisco. The check issued to E. C. French was endorsed by her and deposited in an account in her name at Wells Fargo Bank & Union Trust Co.

On January 5, 1938, the board of directors of the California corporation held a meeting, at which various business matters were transacted, including the report of the president with reference to the acquisition of the assets of the Delaware corporation subject to the liabilities of that corporation.

On July 21, 1938, a balance in the account of the Delaware corporation in the amount of $8.50, existing on the books of Wells Fargo Bank & Union Trust Co. since December 31, 1937, was transferred to the account of the California corporation.

The first directors of the California corporation were dummy directors. After the initial stage the directors and officers of the California company were the same persons who had been officers and directors of the Delaware corporation. The business policies of the California corporation were the same as those of the Delaware corporation and the customers of the former were substantially the same as those of the latter.

In his income tax return for 1937, petitioner claimed capital loss deductions totaling $51,488.05, in connection with the disposition by him. during December 1937, of 2,649 shares of the preferred stock of the Delaware corporation. In an amended answer respondent alleges that in view of the circumstances under which petitioner disposed of his shares of preferred stock he did not sustain any deductible loss in 1937.

*Opinion.*—The question is whether petitioner in computing the amount of capital gain realized in 1937 from the sale or exchange of capital assets, is entitled to deduct the amount of $51,488.05 as a capital loss, sustained in that year upon his investment in the preferred stock of the Delaware corporation.

The pertinent provisions of the Revenue Act of 1936 are shown in the margin.[3]

Respondent contends that petitioner did not sustain a deductible

---

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

* * * * * *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

* * * * * *

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

(h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

* * * * * * *

loss in 1937 by reason of the series of steps set out in our findings; that they were part of one transaction, the substance of which was an exchange of stock in the Delaware corporation for stock in the California corporation pursuant to a plan of reorganization; and that no gain or loss is recognizable because of the provisions of section 112 (b) (3), *supra*.

Section 112 (g) (1), *supra*, provides that the term "reorganization" comprehends "(C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * * or (E) a mere change in identity, form, or place of organization, however effected." Immediately after the transfer of the assets of the Delaware corporation to the California corporation, petitioner and the other stockholders of the transferor were in control of the California corporation. The plan also contemplated a mere change in the place of organization of the Delaware corporation. Clearly, therefore, there was a statutory reorganization, and the plan pursuant to which it was executed was a plan of reorganization, even though it was not in writing. *Hortense A. Menefee*, 46 B. T. A. 865.

Petitioner contends that even if there were a statutory reorganization there was no exchange of stock for stock pursuant to a plan of reorganization as required by the provisions of section 112 (b) (3), *supra*, and that he is, therefore, entitled to the claimed capital loss deduction. He argues that he bought the stock of the California corporation for cash, which he paid to the corporation before he received anything from the Delaware corporation; that the stock was issued to him in accordance with the permit of the California Commissioner of Corporations; that he ultimately received cash upon the liquidation of the Delaware corporation but prior to that time his investment in the California corporation had been completed; that he, on December 15, 1937, and for some time thereafter, had an investment in both corporations; and that the existence of a reorganization is not sufficient to establish tax exempt status unless there is an actual exchange of stock or securities for stock or securities.

Petitioner cites and relies upon *Minnie C. Brackett, administratrix* (1930), 19 B. T. A. 1154; affd., 57 Fed. (2d) 1072; *James E. Wells* (1933), 29 B. T. A. 222; *William H. Mullins* (1928), 14 B. T. A. 426; and *Henry M. Robinson* (1930), 21 B. T. A. 677. He also quotes from *Commissioner* v. *Gilmore*, 130 Fed. (2d) 791, in which the court affirmed the holding of the Board (*Anna V. Gilmore*, 44 B. T. A. 881) that a reorganization (merger of two companies) was not a mere device for liquidating one of the corporations and hence to be disregarded for tax purposes under the rationale of *Gregory* v. *Helvering*, 293 U. S. 465, and similar cases. (Cf. *Commissioner* v. *Kann*, 130 Fed.

(2d) 797, decided at the same time.) The *Brackett* and *Mullins* cases, *supra,* tend to support petitioner's contention that each step taken pursuant to a plan is to be treated as a separate transaction. That view is no longer held. "For income tax purposes, the component steps of a single transaction cannot be treated separately. *Prairie Oil & Gas Co.* v. *Motter,* 66 Fed. (2d) 309 (C.C.A. 10) ; *West Texas Refining & Development Co.* v. *Commissioner,* 68 Fed. (2d) 77 (C.C.A. 10) ; *Ahles Realty Corp.* v. *Commissioner,* 71 Fed. (2d) 150 (C.C.A. 2)." *Bassick* v. *Commissioner,* 85 Fed. (2d) 8; certiorari denied, 299 U. S. 623.; affirming *Wilbur F. Burns,* 30 B. T. A. 163. Effect is to be given to the substance rather than to the form. *Starr* v. *Commissioner,* 82 Fed. (2d) 964; certiorari denied, 298 U. S. 680; *Morgan* v. *Helvering,* 117 Fed. (2d) 334, affirming *Robert M. Morgan,* 41 B. T. A. 379; *George Whittell & Co.,* 34 B. T. A. 1070; *Commissioner* v. *Ashland Oil & Refining Co.,* 99 Fed. (2d) 588; *Gunby, Inc.* v. *Helvering,* 122 Fed. (2d) 203, reversing *Louis W. Gunby, Inc.,* 41 B. T. A. 884; and *United Gas Improvement Co.,* 47 B. T. A. 715 (on appeal C.C.A. 3d Cir.). Cf. *Helvering* v. *Alabama Asphaltic Limestone Co.,* 315 U. S. 179. In determining the substance of a transaction it is proper to consider the situation as it existed at the beginning and end of the series of steps as well as the object sought to be accomplished, the means employed, and the relation between the various steps. *Commissioner* v. *Schumacher Wall Board Corporation,* 93 Fed. (2d) 79; *Republic Steel Corporation* v. *United States,* 40 Fed. Supp. 1017, and cases cited.

Petitioner and two others, the stockholders and directors of the Delaware corporation, decided to have the business, assets, and liabilities of that company taken over by a new California corporation. The desired end was accomplished by a series of steps, all of which were planned in advance. When the plan was completed the former stockholders and directors of the Delaware corporation were in control of the new California corporation, and it had acquired the assets, business, and liabilities of its predecessor. The net result was that petitioner and the other two stockholders had substituted their interest in the Delaware corporation for substantially the same interest in the California corporation. The nonrecognition of gain or loss provisions of the statute are "intended to apply to cases where a corporation in form transfers its property, but in substance it or its stockholders retain the same or practically the same interest after the transfer." *West Texas Refining & Development Co.* v. *Commissioner, supra.*

The result achieved under the plan could have been accomplished by having the California corporation acquire the assets of the Delaware corporation for its stock, and by having the latter distribute the stock to its stockholders in complete liquidation. Petitioner and

his associates apparently chose the longer route, hoping that they might thereby become entitled to a loss deduction. However, as the Supreme Court pointed out in *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609, 613, "a given result at the end of a straight path is not made a different result because reached by following a devious path." The effect of all the steps taken was that petitioner made an exchange of stock of one corporation for stock of another pursuant to a plan of reorganization. No gain or loss can be recognized for tax purposes on such a transaction. The fact that petitioner, by putting up some additional cash, acquired a slightly greater interest in the California corporation than he had in the Delaware corporation is of no particular significance. When he disposes of his shares of California corporation stock, his gain or loss will be measured by the difference between the amount realized and the cost of his Delaware stock plus the additional cash invested in the stock of the California corporation.

### Issue III.

This issue relates to an increased cost basis on the stock of the Delaware corporation claimed by petitioner as a result of transactions between him and the corporation in 1929, involving East Bay Utility District bonds. In view of our conclusion on the second issue, that petitioner did not sustain a deductible capital loss in the taxable year when he disposed of his Delaware corporation stock, it is not necessary to determine the cost basis of that stock or whether it should be increased because of the East Bay Utility District bond transactions.

*Decision will be entered under Rule 50.*