Harry Kanelos v. Commissioner. Aristidis Radopolis v. Commissioner.
Kanelos v. Commissioner
Docket Nos. 112053, 112090.
United States Tax Court
1943 Tax Ct. Memo LEXIS 109; 2 T.C.M. (CCH) 806; T.C.M. (RIA) 43429; September 21, 1943
*109 E. H. Lorenz, Esq., Investment Bldg., Washington, D.C., for the petitioners. E. L. Corbin, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This is a consolidated proceeding involving deficiencies in income tax for the calendar year 1939 determined against Harry Kanelos and Aristidis Radopolis in the respective amounts of $4,651.96 and $4,610.96. With respect to each petitioner, respondent disallowed claimed deductions of $10,109 representing two identical items of expenditure of $9,000 and $1,109, each. Petitioners here seek to sustain such deductions as ordinary and necessary expenses paid for the collection of income and for the conservation of property held for the production of income. Petitioner Radopolis has acquiesced in an adjustment increasing his business income by $1,150.56. Respondent also added $1,000 to the income of petitioner Kanelos as compensation for services, no part of which was reported by this petitioner in his return. Though in his petition Kanelos objected to an increase in his taxable income on this account beyond $500, he offered no evidence regarding the amounts actually received by him as compensation for services and *110 made no reference to this assignment of error in his brief. Therefore, we assume this issue to have been abandoned. Effect will be given to these adjustments in the recomputation under Rule 50. Petitioners filed their tax returns for the year 1939 with the collector of internal revenue for the district of Massachusetts. The case was submitted upon oral testimony and certain exhibits from which we find as follows: Findings of Fact Petitioners Kanelos and Radopolis are residents of Massachusetts. They are both natives of Greece, uneducated and unable to read, speak or understand English except in a most limited way. Kanelos' occupation is that of repairing hats and shoes while Radopolis operates a store dealing in cigars, cigarettes and similar merchandise. In 1939 petitioners jointly purchased a ticket on the Irish Sweepstakes for $2.50, each contributing half of its cost and agreed to divide equally the winnings, if any. The ticket proved to be a winner entitling petitioners to receive $137,986.25. Notification of their good fortune was made by letter which petitioners were unable to read. They thereupon consulted a lawyer, who, accompanied by petitioners, inquired of two banks *111 regarding their facilities for collecting the winnings. The banks refused to be responsible for loss in the transmittal of the ticket to Dublin where presentation was required. The lawyer then advised petitioners that the three of them should go to Dublin to obtain the money. Petitioners orally agreed to pay all expenses of the trip and each to pay the lawyer $1,000 for his services in assisting them in collecting their winnings. The party sailed on a vessel leaving Boston July 15, 1939. They arrived in Galway, Ireland, seven days later from whence they proceeded to the office of the Sweepstakes Association in Dublin. No difficulties were encountered in establishing their right to the money which was then forwarded by draft from the Association's bank directly to Mr. Kanelos' bank in Webster, Massachusetts. The party procured passage on the next steamer home, spending six days in London awaiting the ship's departure from Southampton. The entire trip took 23 days and cost $2,218, including fare, hotel rooms, food, drinks and tips for all three, which expense petitioners shared equally. After the party returned home the lawyer demanded that each petitioner pay him $12,000. This was *112 the first time that any payment other than $1,000 from each had been suggested. Petitioners each paid the lawyer $9,000 because he threatened to bring them to court and cause them a "lot of trouble" unless such payment was forthcoming. Each drew a certified check to his order for $9,000 and secured a receipt for such payment. They were satisfied to pay these sums. Notwithstanding this, the lawyer subsequently sued petitioners for $12,000 more but did not prevail in the action. Reasonable compensation for the services rendered by the attorney did not exceed $2,000. The lawyer above referred to does not represent petitioners in the present proceeding and the attorney who here appears for petitioners is in nowise associated with him. On their income tax returns for 1939 petitioners each reported one-half of the proceeds of the ticket, or $68,993.12, less $10,109 consisting of one-half the expenses of the trip to Dublin and the amount paid the lawyer. In determining the deficiency respondent disallowed the deductions and included in gross income of each the full amount of one-half of the proceeds of the lottery ticket. Opinion The sole question presented for determination is whether *113 or not petitioners are entitled to deduct, in computing their net income for 1939, amounts paid an attorney, and traveling expenses incident to collecting the proceeds of a lottery ticket on an Irish Sweepstakes. Petitioners contend that such expenditures are deductible under authority of section 23 (a) of the Internal Revenue Code as amended to allow non-trade or non-business expenses by section 121 of the Revenue Act of 1942. This provision, made retroactive to include the taxable year 1939, so far as pertinent here is as follows: SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS. (a) Deduction for Expenses. - Section 23 (a) (relating to deduction for expenses) is amended to read as follows: * * * * *
"(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." It is manifest that the traveling expenses and at least a portion of the amounts paid petitioners' lawyer are expenses paid for the collection of income. They bear a reasonable and proximate *114 relation to the collection of the proceeds accruing to petitioners as a result of winning the Irish Sweepstakes, and, thereby meet the test imposed. See John W. Willmott, 2 T.C. 321, Walter S. Heller, 2 T.C. 371. Indeed, respondent does not debate this connection, but bases his case on the contention that the expenditures in question are neither ordinary nor necessary within the meaning of the statute. Thus, the issue is drawn. Cases are legion wherein taxpayers have sought to bring given expenses to which they had been subjected within the ambit of the adjectives "ordinary" and "necessary". Obviously, most such cases involve business expenses, since the statute, until recently, encompassed no other kind. So far as helpful in determining the purpose of the two adjectives, however, they continue to point in situations involving the non-business amendment, for there is no license to assume the words to have acquired a different or extended meaning in the new context. Our first inquiry is whether the expenditures in questions were ordinary. Justice Cardozo, in Welch v. Helvering, 290 U.S. 111, *115 said, "* * * Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. * * *" And Justice Douglas recently said in Deputy, et al. v. Du Pont, 308 U.S. 488, "Hence, the fact that a particular expense would be an ordinary or common one in the course of one business and so deductible under § 23 (a) does not necessarily make it such in connection with another business." Thus we are admonished that an expenditure may or may not be ordinary depending upon the circumstances which, we may assume, might include differences in the accomplishments and capabilities of the individual concerned as well as variations in the nature of businesses conducted. In the present case petitioners were poor men without benefit of education or business experience except upon the most simple plane. They could neither read nor write English and could speak and understand it only with great limitation. They were suddenly confronted with the possibility of acquiring a fortune contingent only upon their performing certain acts in relation to its collection. Impressed with the magnitude *116 of these winnings and in full realization of their handicaps, they determined to employ an attorney to assist them, presumably knowing that lawyers were commonly engaged and, hence, experienced in th collection of moneys. We opine that petitioners' act was consonant with that of a reasonably prudent man in the same circumstances. Accordingly, an attorney's fee attributable to services rendered in obtaining the proceeds of the wager here constitutes an ordinary expense. We also think that the traveling expenses must be classified as ordinary in the present case. Petitioners, having reposed their confidence in the lawyer, quite naturally accepted his conclusion that all three should go to Dublin, petitioners because they were partners in the enterprise and the attorney because petitioners were unable to act for themselves. Thus, the expenses of the trip are reasonably a part of those arising from the employment of the attorney. Furthermore, there is no suggestion that the trip was made for any purpose aside from the collection of the sweepstakes winnings. No time was consumed in unrelated travels or sightseeing and the usual and customary modes of transportation were used. Were the *117 expenses in question necessary within the context of the Code? Respondent asserts that they were not since alternate means of collection were open to petitioners. This is not a fair test. Many roads often lead to the same point. A taxpayer need not in all instances take what the Commissioner regards as the shortest route at risk of economic loss. It seems to us that considerations pertinent in the ascertainment of an ordinary expense are likewise applicable here. Petitioners, unable to read and understand English, were incapable of acting in their own behalf. It was incumbent upon them to obtain assistance and a reasonable fee for such assistance is to be regarded as a necessary expense. They exercised their best judgment in placing the matter in a lawyer's hands and, after ascertaining that the banks would not assure safe transmittal, it was he who recommended the trip to Dublin as the prudent and most expedient means of collecting the proceeds of the sweepstakes ticket. The course selected not being frivolous, we are unwilling to substitute our judgment of its necessity for that of petitioners. Expenses have been deemed ordinary and necessary in instances where their essentiality *118 was far more problematical than is the case here. In Bing v. Helvering, 76 Fed. (2d) 941, the taxpayer, an experienced businessman, paid a $35,000 commission to one assisting him in securing a $5,000,000 bank loan. While the court held the expense a cost of investment because of certain other facts there existent, it did say, through Judge Learned Hand, We do not doubt that if the whole payment can be regarded as made to carry on Bing's trade or business, it was "ordinary and necessary." Though it is hard for us to understand why he should not have felt free to go directly to the bankers, nobody disputes that, as business was done in those days and perhaps is still done, the supposed amenities of an introduction by a go-between were regarded as necessary. We are in no position to gainsay what from the outside appears so preposterous. That the outlay was "ordinary" is also true; not indeed in the sense that it was not unique in Bing's career, as perhaps it was, but because people frequently did business in this extraordinary way. * * * That traveling to Dublin to personally present a winning sweepstakes ticket is not a novel procedure is evidenced *119 by the case of Max Silver, 42 B.T.A. 461. We conclude that the expenses of the Dublin trip and a reasonable fee for services rendered in collecting the proceeds of the ticket are ordinary and necessary expenses under the peculiar facts incident to the present proceeding. It does not follow from this conclusion however, that petitioners are each entitled to deduct $9,000 as legal fees paid in the collection of income. Under repeated questioning at the hearing petitioners both unequivocally testified that their oral arrangement with the lawyer was to pay him for his services the total of $2,000 plus his traveling expenses to Dublin; that no demand for a larger fee was made until their return to Webster, Massachusetts; and that the $9,000 payment by each was made under the lawyear's threat of suit and "trouble" if the named sum was not forthcoming. In this connection, Kanelos testified, "He told us if we didn't agree to pay that amount, he would sue us in court," and "We paid him the additional amount because he threatened to take us to court, and we did not want to have any trouble." When asked if the attorney told him that he had misunderstood the oral *120 agareement to pay but $1,000, Mr. Kanelos replied, "No, there was no charge of misunderstaning." Mr. Radopolis testified, "He [the lawyer] agreed for $9,000 because he said, 'If you don't pay $9,000, I will bring you to court and a lot of trouble.'" And further, "He said, 'Too much work. Before, now it is different, because you got the money.'" It clearly appears that $8,000 of the amount which each petitioner paid their attorney represented an excess of the amount of compensation agreed upon in advance for his services and also that the reasonable compensation for the attorney's services did not exceed the amount of $2,000 which petitioners initially agreed to pay. Furthermore, it appears that the payment of such excessive amount by each of the petitioners was made under pressure of threatened litigation to enforce demands which smack strongly of extortion. It was paid with the impression that litigation and trouble would thereby be avoided, though subsequent events revealed that petitioners had failed of their objective. Payments made in such circumstances are neither ordinary nor necessary, Kelley-Dempsey & Co., 31 B.T.A. 351, and, therefore, are *121 nondeductible. Furthermore, such excess payment of $8,000 by each of the petitioners is nondeductible for the reason (1) that it does not represent reasonable compensation for services, and (2) that it is an expense personal in nature. We hold that each petitioner is entitled to deduct, in computing his net income for 1939, $1,000 as attorney's fees and $1,109 as traveling expenses paid in connection with the collection of income, such expenses in this instance being ordinary and necessary within the meaning of section 23 (a) of the Internal Revenue Code as amended by section 121 of the Revenue Act of 1942. The deduction of the additional amounts paid the lawyer by each petitioner was properly disallowed. Decision will be entered under Rule 50.