OPINION. HaeRon, Judge: Petitioner realized gains from the distributions by the three banks during the taxable years. There is no dispute over the amount of the gains realized. The controversy relates only to the question of whether the gains are short term taxable gains, taxable to the extent of 100'percent thereof, as respondent has determined, or whether they are long term capital gains, less than 100 percent of which are to be taken into account in computing net income. The question arises under section 115 (c) of the Internal Revenue Code,[1] which was in effect during the taxable years. Under section 115 (c) the general provision is that gains recognized from corporate distributions in liquidation are to. be considered as short term capital gains, but an exception is made with respect to amounts distributed in “complete liquidation” which is defined. Petitioner claims the benefit of the exception. Respondent contends that the distributions were not made in complete liquidation as defined. Respondent takes the view that, under the facts, the adoption by the stockholders of the respective banks of plans of voluntary liquidation in the years 1938, 1940, and 1941 are not material or determinative of the question. He takes the view that the banks were in liquidation after May 12,1933, when the Emergency Farm Mortgage Act of 1933 was enacted, and that the distributions in question were made in pursuance of a liquidation, in each instance, which began in 1933. We understand this argument to mean that the respondent contends that the distributions in question were not made “in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan,” etc., within the meaning of section 115 (c). Respondent contends that the plans of voluntary liquidation adopted by the stockholders of the banks can not be said to be bona fide plans of liquidation, within the meaning of the statute, if in fact the liquidation was begun in 1933. Respondent urges that the question presented under the particular facts should be considered with regard to the rules that are often given attention where a tax avoidance motive is present, such as the rules that questions of taxation should be determined by viewing what was actually done rather than the declared purpose of the participants, citing Weiss v. Stearn, 265 U. S. 242; and that where there is doubt about a taxpayer’s right to a privilege or exemption, the statute must be construed in favor of the Government, citing Bank of Commerce v. State of Tennessee, 161 U. S. 134. Respondent also contends that the exception provided in section 115 (c) was intended to apply only to liquidations which began after December 31, 1937, and was not intended to apply to liquidations which were in progress prior to January 1, 1938. The fact on which respondent places chief reliance is that after the enactment of the Emergency Farm Mortgage Act of 1933 the banks could not issue any tax-exempt bonds or make any farm loans except such as were necessary in the refinancing of existing loans. He relies upon the statements of the purpose of the Emergency Farm Mortgage Act which have been set forth in the findings of fact to the effect that the effect of the act was to restrict the joint stock land banks to an orderly liquidation of their assets. Respondent says that all of the .banks in question were “in process of liquidation” from May 12,1933, until the date of payment of the final liquidating distributions to the stockholders. Upon due consideration of respondent’s'argument, we can not agree that the plans of liquidation adopted by the stockholders of the banks in question were not bona fide. We agree that all of the facts are to be considered and that the formal steps taken by the stockholders should not be isolated from the background, but we must conclude that the over-all view of the facts brings us to a result other than that reached by the respondent. The banks in question were chartered pursuant to the Federal Farm Loan Act, sec. 811, Title 12, U. S. C. A., p. 843. Under that act they were restricted as to the kind of business they could transact and were subject to regulation by the Farm Credit Administration, but they were nevertheless “privately owned corporations organized for profit to the stockholders.” Federal Land Bank v. Priddy, 295 U. S. 229; Bankers Farm Mortgage Co., 1 T. C. 406; Dallas Joint Stock Land Bank v. State, 133 S. W. (2d) 827. Under Federal statute, sec. 822, Title 12, U. S. C. A., p. 850, provision is made for the vol-imtary liquidation of joint stock land banks, under which each bank is given the right to go into liquidation at any time provided it has made provision, with the approval of the Federal Farm Loan Board, for the payment of its liabilities and has been authorized to liquidate by vote of two-thirds of its stockholders. Andrews v. St. Louis Joint Stock Land Bank, 107 Fed. (2d) 462, 467. The above provision for voluntary liquidation is found in section 16 of the Federal Farm Loan Act of July 17,1916, as amended by the Act of May 29, 1920, ch. 215, 41 Stat. 691, and the Emergency Farm Mortgage Act of 1933 did not amend or affect the provisions of section 16 of the Federal Farm Loan Act of 1916, as amended. Also, the Emergency Farm Mortgage Act did not direct or require liquidation of any joint stock land bank at any specified time, but left the matter of liquidation to the judgment and discretion of the stockholders of those banks, except in cases of insolvency. The Emergency Farm Mortgage Act permitted the joint stock land banks to continue limited operations and to hold their assets even though they were prohibited from issuing new farm mortgage bonds or making new farm loans and were eventually to be liquidated. In so far as the Federal statutes relating to the joint stock land banks are pertinent to the question presented here, it can not be concluded that under the 1933 Emergency Act there was a mandate to the stockholders of the banks to immediately liquidate which excluded and made inconsistent with the terms of that act the voluntary liquidation of the banks by a two-thirds vote of the stockholders. Our conclusion is that the action of the stockholders of the banks in question in adopting plans of voluntary liquidation was consistent with and in accord with the applicable Federal statutes. We do not understand respondent to make a very strong argument to the contrary. As we see the problem, the real question is whether the adoption of the plans of voluntary liquidation by the stockholders of the respective banks in 1938,1940, and 1941 shows a lack of bona fides when considered with the procedures followed during the respective intervals between May 12, 1933, and the dates of adoption of the plans. The facts have been set forth fully and we do not repeat them. We only conclude that there was no lack of bona -fides. We think the officers and directors of the banks were exercising their honest judgment in putting the affairs of the banks in order and in endeavoring to operate them profitably during an extremely difficult period. Their efforts were devoted to a program of operations which would facilitate orderly liquidation and dissolution of the banks at some future time. Cf. W. E. Guild, 19 B. T. A. 1186. Such efforts continued over a period of from 5 to 7 years, and they proved profitable to the banks, and upon liquidation were profitable to the stockholders, including petitioner. Under the facts, it is held that the respective plans of voluntary liquidation adopted by the stockholders of the several banks involved were bona fide. Our views as expressed above mean, of course, that we reject respondent’s view that the plans of voluntary liquidation should be disregarded in determining the question at issue. We conclude that they are entitled to full recognition under all of the facts. That being so, respondent’s contentions fall. Both the terms of the plans of voluntary liquidation and the carrying out of the provisions of the plans are within the provisions of section 115 (c). It was clearly provided in the plans of voluntary liquidation that the liquidations, in so far as it involved the transfer of the assets of the banks to the stockholders in cancellation of their stock, were to be completed within a three-year period, and actually they were completed within that period. Also, it is clear that there were no plans for the transfer of the assets of the banks to the stockholders in cancellation of their stock, and no such transfers were made to the stockholders, at any time prior to the adoption of the plans of voluntary liquidation. Thus the amounts distributed as liquidating dividends come squarely within section 115. It is held that the distributions received by petitioner in the taxable years were “amounts distributed in complete liquidation” within the provisions of section 115 (c). Respondent’s determination is reversed. Issue II. Petitioner claims deduction under section 23 (a) (2) of the Internal Revenue Code, as amended by section 121 of the Revenue Act of 1942, of the sum of $3,011.48, as a nonbusiness expense. These expenditures in 1939 were incident to litigation before the United States Board of Tax Appeals in 1936, and to an appeal which was taken from the decision of the Board. Respondent contends that the expenditures are not deductible under the above provision of the statute because the subject matter of the litigation did not bear a reasonable and proximate relation to the production or collection of income, or to the management, conservation, or maintenance of property held for that purpose. Respondent relies upon John W. Will-mo tt, 2 T. C. 321. The subject matter of the litigation appears in the report on the proceeding entitled Southern Bell Telephone & Telegraph Co., 34 B. T. A. 540, in which proceeding petitioner, along with others, was a petitioner. Respondent had determined a deficiency in the income tax of the Fayette Co. for the year 1929 in the sum of $256,623.89, and proposed to assess the same proportionately against all of the petitioners as transferees of the assets of the Fayette Co., under section 311 of the Revenue Act of 1928. The total outstanding common stock of the Fayette Co. was 101,240 shares, and it appears that petitioner owned 4,525 shares thereof. It was the respondent’s theory in that case that, disregarding the form and the steps of the transaction under which petitioner and the others sold their stock, there had been a transfer by Fayette Co. of its assets to the petitioners, and a sale of the assets by petitioner and the others to a third party. The Board of Tax Appeals rejected respondent’s theory, holding that the several petitioners were not liable as transferees. That holding made, the Board of Tax Appeals did not consider other issues including the issue whether the Fayette Co. realized any gain upon the transfer of its assets in 1929. The question in the proceeding before the Board of Tax Appeals was dependent, inter alia, upon whether the stockholders of the Fayette Co. had sold their stock or whether they had sold the assets of the company. Petitioner, in this proceeding, argues that in the earlier litigation before the Board of Tax Appeals he was endeavoring to establish a valid sale of his stock and his right to retain the proceeds of the sale, which included a profit of roughly $109,000. In the Will-mott case we said that “Attorney’s fees and expenses of litigation are deductible under section 121 of the Revenue Act of 1942 only when the subject matter of the litigation bears a reasonable and proximate relation to the production or collection of income or to the management, conservation, or maintenance of property held for that purpose.” We examined the transaction between the taxpayer and his wife, the transfer by him of a one-half interest in property to the wife, to determine whether the original transaction was proximately related to the production or collection of income. We concluded that it was not, and that “any litigation arising out of the transaction involving its tax consequences would also not be related” to the production or collection of income. We held that the fees and expenses paid in connection with the litigation were not deductible under section 121. However, following the same approach here, we think a different result must be reached. The original transaction was the sale of the Fayette Co. stock, and petitioner entered into that transaction for profit and realized profit. Expenditures in litigation relatirig to that transaction would have come within section 121 as expenditures in connection with the collection of income. In Walter S. Heller, 2 T. C. 371, 375, upon which petitioner relies, we pointed out that Congress intended the term “income” to embrace income from the disposition of property. Applying the reasoning which was employed in the Will-mott case, we must say here that since the original transaction was proximately related to the production or collection of income, any litigation arising out of that transaction involving its tax consequences would also proximately relate to the production or collection of income, and, therefore, fees and expenses paid in connection with such litigation would be deductible under section 121. Accordingly, under the authority of the WUlmott and Heller cases, petitioner is sustained and it is held that the expenditures are deductible under section 121. Decision will be entered, v/nder Rule 50. SEC. 115. DISTRIBUTIONS BT CORPORATIONS. [[Image here]] (c) Distributions in Liquidation. — Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. Por the purpose of the preceding sentence, “complete liquidation” includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, il) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1037, • • *