William J. Laidlaw v. Commissioner. Florence Ruth Laidlaw v. Commissioner. Pauline Reynolds v. Commissioner. J. H. Reynolds v. Commissioner.
Laidlaw v. Commissioner
Docket No. 1689, 1690, 2259, 2260.
United States Tax Court
1944 Tax Ct. Memo LEXIS 137; 3 T.C.M. (CCH) 865; T.C.M. (RIA) 44278; August 12, 1944
*137 John Prentice Wilson, Esq., 705 Magnolia Bldg., Dallas, Tex., for the petitioners. T. Marvin Kelley, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The Commissioner has determined deficiencies in income taxes against William J. Laidlaw and Florence Ruth Laidlaw for the years 1938, 1939, 1940, and 1941, and against J. H. Reynolds and Pauline Reynolds for the year 1938, as follows: Deficiency
Docket No.
Taxpayer
1938
1939
1940
1941
1689
William J. Laidlaw
$17,118.93
$216.71
$785.07
$83.87
1690
Florence Ruth Laidlaw
17,118.93
216.71
785.07
83.87
2259
Pauline Reynolds
17,541.19
2260
J. H. Reynolds
17,541.19
Certain items entering into the determinations are not contested. The four cases were consolidated for hearing, since all have one issue in common, whether or not the disposition of a 99-year leasehold in 1938 was a sale or a non-taxable exchange under the provisions of section 112(b)(5). The second issue, involving only the Laidlaws, concerns the deductibility by them of certain expenses incurred by William J. Laidlaw in the sale of certain "surplus certificates" of a corporation in the years *138 1938, 1939, and 1940. Issue No. 1 - Sale or Exchange Findings of Fact Petitioners, William J. Laidlaw and Florence Ruth Laidlaw, husband and wife, reside in Fort Worth, Texas, and petitioner J. H. Reynolds and his wife, Pauline, reside in Cisco, Texas. All filed community property returns on the cash basis for the years involved. On August 4, 1938, the Mary Couts Burnett Trust Estate leased to Educators Mutual Life Insurance Company for a term of 99 years what was then known as the Reynolds Building in Fort Worth, Texas, in consideration of the lessee's agreement to pay annual rentals as specified in the lease. Payments were to begin January 1, 1939. The lease was assignable. On September 13, 1938, the Executive Committee of the Board of Directors of Educators Mutual Life Insurance Company (hereinafter called Educators Mutual) decided that the obligations of the lease were overburdensome, whereupon it accepted a proposal of William J. Laidlaw and J. H. Reynolds to take over the lease and assume its liability, provided Educators Mutual would take the necessary steps to femove the home office from Dallas to Fort Worth; and would rent the necessary space for its home office *139 in the Reynolds Building. On September 15, 1938, Educators Mutual assigned its lease to Laidlaw and Reynolds without consideration other than the assumption of the obligations of the lease. The intention of Laidlaw and Reynolds in acquiring the lease was to assign it to a new insurance company which they planned to organize in exchange for the capital stock of the new company. Thereafter, in pursuance of the plan to organize a new company, Laidlaw sought and received permission of the Chairman of the Board of Insurance Commissioners of the State of Texas, to carry the lease of the Reynolds Building as an asset of the proposed company at a value of $250,000. Because the Civil Statutes of the State of Texas (Title 78. Chap. 2, Art. 4701, et seq.) required that the capital stock of an insurance company be fully paid in in cash, stocks, notes, bonds, or mortgages, Reynolds and Laidlaw on November 17, 1938, negotiated a loan of $250,000 from the Mercantile National Bank of Dallas, to be used for the sole purpose of obtaining the charter and thereafter to be returned directly to the bank. Reynolds and Laidlaw gave their personal demand note for the amount of the loan, immediately indorsed *140 the cashier's check issued to them, and deposited it in the Mercantile National Bank to the credit of Century Life Insurance Company, the name of the proposed corporation. On November 18, 1938, the articles of incorporation and application for charter of the Century Life Insurance Company of Fort Worth. Texas, were approved by the Board of Insurance Commissioners of Texas. The articles of incorporation provided for a capital of $250,000 divided into 25,000 shares of no par value, all of which was recited to have been "fully paid for in cash." On Monday, November 21, 1938, the Board of Directors of the Century Life Insurance Company (hereinafter called Century) held its first meeting, at which there were issued and delivered to petitioners, Laidlaw and Reynolds, 24,950 shares of the capital stock of the company. The following resolution was then adopted: "There was thereupon submitted to the Board of Directors a proposal by W. J. Laidlaw and J. H. Reynolds to sell to the Company for a consideration of $250,000.00 a certain Building and Leasehold Estate located in the City of Fort Worth, Tarrant County, Texas, and known as the Century Building and after due consideration it appearing *141 to the Board of Directors that the purchase of said property as a Home Office Building would be to the advantage of the Company, and whereas said proposed purchase has been approved by the Board of Insurance Commissioners of the State of Texas, the following resolution was unanimously adopted: "RESOLVED, that the President and Secretary of the Company be and they are hereby authorized and instructed on behalf of the Company to purchase from W. J. Laidlaw and J. H. Reynolds a Leasehold Estate covering certain property known and described as follows: * * *
said purchase to be at a consideration of $250,000.00 and under the terms of which the Century Life Insurance Company shall acquire all of the rights and assume all of the liabilities of the original lessee under the original Lease Contract entered into by and between Educators Mutual Life Insurance Company of America and the Mary Couts Burnett Trust and which said Leasehold Estate was later transferred to said J. H. Reynolds and W. J. Laidlaw." Pursuant to the resolution, and on the same day, petitioners, Laidlaw and Reynolds, executed an assignment of the lease to Century, and simultaneously received a check for $250,000, payable *142 to them. The following day Laidlaw and Reynolds indorsed the check over to the bank in payment of their demand note executed on November 17th. The Commissioner determined that each community realized a taxable gain on the sale of the leasehold. Petitioners contend that the assignment of the leasehold was not a sale, but a non-taxable exchange under the provisions of section 112(b)(5) of the Revenue Act of 1938. Opinion Clearly the several steps from the transfer of the leasehold to Reynolds and Laidlaw to their assignment of the leasehold to the Century Life Insurance Company were all taken with one objective, to secure the capital stock of the new company in exchange for the leasehold. Because of the insurance laws of Texas, requiring that the capital stock of an insurance company be paid for in cash or certain securities, the transaction took the form of a purchase of stock and a sale of the leasehold through the medium of a temporary conditional bank credit. We have many times held that the several steps of an integral transaction cannot be isolated for tax purposes and that substance must prevail over form. That the transaction if held to be an exchange may have been in violation *143 of the laws of Texas does not change the result. This case is substantially indistinguishable from Louis W. Gunby, Inc. v. Helvering, 122 Fed. (2d) 203, reversing 41 B.T.A. 884, and Hoboken Land & Improvement Co., 46 B.T.A. 495, affirmed 138 Fed. (2d) 104. On the authority of those cases it is held that no taxable gain was realized in the transfer of the leasehold to Century. Respondent relies solely on Minnie C. Brackett, Admx., 19 B.T.A. 1154. The theory of that case, however, is no longer held. Walter S. Heller, 2 T.C. 371. Issue No. 2 - Deductibility of Expenses Findings of Fact This issue involves only petitioners William J. and Florence Ruth Laidlaw. On March 8, 1938, Educators Mutual passed a resolution authorizing the issuance of "surplus certificates" in the amount of $250,000. These certificates represented a contingent obligation of the corporation to repay to the purchaser the face value thereof at such time as the earned surplus of the corporation reached a certain point. Interest, *144 payable only out of earnings, was provided for in the certificates. In 1938 certificates of the face value of $50,000 were delivered to Laidlaw in consideration of the cancellation of a long-term general agency contract with Educators Mutual. The assets of the corporation at that time were meager and the certificates delivered to Laidlaw had no market value except as the remaining $200,000, face value, of certificates could be sold to provide working capital for the company to enable it to expand. Article 4816 of Chapter 7 of Title 78 of the Civil Statutes of Texas prohibits mutual insurance companies from paying any sales or promotional expenses in connection with the sale of surplus certificates. To provide a market for his surplus certificates, Laidlaw agreed to pool his block with the unissued $200,000 of certificates, and to dispose of the whole block in one promotional campaign, the entire expense to be deducted from the proceeds of the sale of his share. Laidlaw assumed this expense because it would enable him to realize a greater net profit from the sale of his certificates, even with the burden of the entire expense. In carrying out the sales program the entire block of *145 certificates was transferred to a third party trustee. Laidlaw employed salesmen to sell the certificates to the general public and paid the salesmen out of the profits derived from the sale of his part of the block. When the certificates were sold 4/5 of the amount was issued out of the company's certificates and 1/5 out of the petitioner's certificates. For the years 1938, 1939, and 1940, the Commissioner allowed only so much of the expenses as were attributable to the sale of the certificates owned by Laidlaw, or 1/5 of the total expenses, the amount of which is not in dispute. Petitioners contend that the total expenses are deductible as ordinary and necessary expenses paid or incurred during the taxable years for the production of income under section 23(a)(2) of the Internal Revenue Code, as added by section 121 of the Revenue Act of 1942. [1]
*146 Opinion Respondent contends that the disallowed expenses were incurred by Laidlaw for the benefit of Educators Mutual and, therefore, are not deductible by petitioners, citing as authority for his position Interstate Transit Lines v. Commissioner, 319 U.S. 590. We cannot agree. While Educators Mutual certainly secured a distinct benefit from the expenditures made by petitioner in the sale of its surplus certificates, the record is most explicit in showing that the expenditures were primarily for his own benefit. Respondent concedes that while the certificates of the corporation lay idle, Laidlaw's were worthless and that the corporation could not itself promote the sale. The only hope Laidlaw could have of realizing anything on the certificates issued to him was to sell those remaining with the corporation. On these facts it seems clear that the expenditures made by Laidlaw were ordinary and necessary expenses incurred by him for the production of income and are deductible under section 23(a)(2) of the Internal Revenue Code as added by section 121 of the Revenue Act of 1942. Decisions will be entered under Rule 50.
Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME (a) Expenses. - * * * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩